The Honorable Robert S. Lasnik

1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11

MICHAEL ANDERSON and TRACEY
ANDERSON,

12                                      Plaintiffs,

        v.

13  REED HEIN & ASSOCIATES, LLC d/b/a
    TIMESHARE EXIT TEAM,

14
                                        Defendant.
15
16
17

No.  2:16-cv-00785-RSL

**UNOPPOSED MOTION FOR
APPROVAL OF SETTLEMENT, CLASS
NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS**

NOTE ON MOTION CALENDAR:
Friday, December 22, 2017

NO ORAL ARGUMENT REQUESTED

18                    **I.    INTRODUCTION**

19          Plaintiffs, Michael Anderson and Tracey Anderson ("Named Plaintiffs"), and Defendant,

20  Reed Hein & Associates, LLC d/b/a Timeshare Exit Team ("Defendant"), have agreed, subject to

21  Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant

22  monetary relief. The settlement, which followed a thorough investigation and discovery, satisfies

23  the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement

24  because it resolves a bona-fide dispute, was reached after contested litigation, was the result of

25  arm's-length settlement negotiations, assisted by a private mediator, between experienced

26  counsel, and provides good value to the workers whom it will benefit. Plaintiffs respectfully

27
28

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 1
(2:16-cv-00785-RSL)

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

request that the Court issue an order: (1) approving the $540,000.00 settlement set forth in the

Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit 1 to the

Declaration of Donald W. Heyrich in Support of Plaintiffs' Unopposed Motion for Approval of

Settlement, Class Notice, Service Awards, and Attorneys' Fees and Costs ("Heyrich Decl."); (2)

certifying the Settlement Class pursuant to 29 U.S.C. § 216(b) for settlement purposes only; (3)

approving the proposed Notice of Class Action Settlement ("Settlement Notice") and "Consent

to Join Settlement, Release, and Claim Form" ("Consent Form") (attached as Exhibits A and B,

respectively, to the Settlement Agreement), and directing distribution of each; (4) approving

service awards of $5,000 to each of the Named Plaintiffs; (5) approving Plaintiffs' request for

$145,693 settlement for attorneys' fees and $4,307 for litigation costs and expenses; (6)

approving the Settlement Administrator's fees and costs of $5,000;  (7) dismissing the Action

and all Released Claims without prejudice as to Plaintiffs and all Participating Settlement Class

Members, with such dismissal becoming a dismissal with prejudice 15 business days after the

lapse of the Notice Deadline, provided the specific relevant terms of the settlement have been

met;[1] (8) providing that each Party shall bear his or its own attorneys' fees and costs except as

otherwise provided herein; and (9) declaring that the Court shall have continuing jurisdiction

over the Action (including for purposes of submitting the returned Settlement Consent Forms

from Participating Settlement Class Members).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations

Named Plaintiffs worked for Defendant as Client Advisors from August to December

2015. Complaint, Dkt. # 1 ¶¶ 10-11. Plaintiffs allege that Defendant violated the FLSA by

improperly classifying them, and other Client Advisors, Regional Consultants, Corporate

Consultants, and other similar positions, as independent contractors rather than employees,

---

[1] During the period of time in which the dismissal is without prejudice, Plaintiffs may file a motion for leave to reinstate should Reed Hein either fail to make payment or exercise its right to terminate the Settlement pursuant to specific terms in the Settlement Agreement. After the case is dismissed with prejudice, the Parties agree to submit any unresolved dispute regarding the Settlement to mediator Teresa Wakeen, and to be bound by her decision as to such dispute in the event it cannot be resolved by agreement.

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 2
(2:16-cv-00785-RSL)

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1   thereby denying them protections such as the ability to collect unemployment compensation

2   benefits. *Id.* ¶¶ 15-16.  Plaintiffs further allege that Defendant willfully failed to pay Plaintiffs for

3   all hours worked and overtime incurred. *Id.* ¶ 16.   Defendant denies that it committed any

4   wrongdoing or violated any laws pertaining to classification of workers, payment of wages, or

5   hours worked and vigorously disputed the claims asserted in the litigation.

6   **B.      Overview of Investigation, Litigation, and Settlement Negotiations**

7            Before the initiation of this action, Plaintiffs' Counsel conducted a thorough investigation

8   into the merits of the potential claims and defenses. Heyrich Decl. ¶ 4. Plaintiffs' Counsel

9   focused their investigation and legal research on the underlying merits of the potential class and

10  collective action members' claims, the damages to which they were entitled, and the propriety of

11  collective action certification. *Id.* Plaintiffs' Counsel obtained and reviewed documents from

12  Plaintiffs and other sources, including job descriptions, pay records, and corporate documents.

13  *Id.*

14          On May 27, 2016, Plaintiffs Michael Anderson and Tracey Anderson filed a collective

15  action Complaint for Injunctive Relief and Damages, alleging violations of the Fair Labor

16  Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and attached the notice required pursuant to

17  section 216(b) of the FLSA. *See* Dkt. # 1.  On July 27, 2016, Defendant answered the Complaint

18  and provided affirmative defenses, asserting that it had not violated any laws. *See* Dkt. # 6.

19          Plaintiffs and Defendant exchanged discovery in multiple rounds.  Heyrich Decl. ¶ 6.

20  Plaintiffs' counsel extensively reviewed the documents and performed numerous calculations on

21  the data provided. *Id.* Plaintiffs' Counsel spent over four months and approximately 85 hours

22  collecting data and performing calculations from the various document productions received

23  from Defendant, including performing multiple calculations and modeling to determine the

24  extent of the potential class members' damages. *Id.*  Because Reed Hein's data was not

25  uniformly maintained, and had several records custodians prior to and over the course of the

26  litigation, there were often delays in receiving data and various data sets that had to be

27  reproduced due to errors, thus creating additional and duplicate review and calculation time for

28  PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
    SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
    ATTORNEYS' FEES AND COSTS - 3
    (2:16-cv-00785-RSL)

    **HKM Employment Attorneys LLP**
    600 Stewart Street, Suite 901
    Seattle, Washington  98101
    (206) 838-2504

1  Plaintiffs' Counsel. *Id.* The parties' counsel also engaged in multiple telephone conversations
2  and email exchanges regarding the documents and data provided up to the date of mediation.  *Id.*
3      On May 11, 2017, the parties attended private mediation with Teresa Wakeen, a well-
4  regarded mediator who is experienced in employment law class and collective actions. *Id.* ¶ 7.
5  After more than 13 hours of mediation, the parties reached an agreement on the material terms of
6  the settlement. *Id.* During the following five months, the parties engaged in further debate and
7  negotiation, and exchanged drafts and finalized the terms of the settlement memorialized in a
8  formal Settlement Agreement that was fully executed by the parties and their counsel on October
9  30, 2017. *Id.* ¶ 9 and Ex. 1 (hereinafter "Settlement Agreement").

### III.    SUMMARY OF THE SETTLEMENT TERMS

**A.    The Settlement Fund**

12      The Settlement Agreement establishes a fund of $540,000.00 (the "Fund") from which
13  Class Members can claim settlement awards. Settlement Agreement ¶ 11(k). The Fund covers
14  any Court-approved service awards to Plaintiffs, any Court-approved attorneys' fees and costs,
15  and the settlement claims administrator's ("Settlement Administrator's") fees and costs, in
16  addition to class member awards. *Id.* at ¶ 11(l).

**B.    Eligible Class Members**

18      "Eligible Settlement Class Members," referred to as "Participating Settlement Class
19  Members" for purposes of clarity in this motion, are any and all current and former Client
20  Advisors, Regional Consultants, Corporate Consultants, and individuals who hold or held similar
21  positions, from the time period May 31, 2013 to June 1, 2017, who timely opt-in to the
22  Settlement Class. Settlement Agreement ¶ 11(h).  The full Settlement Class list has 55 members.
23  Heyrich Decl., Ex. 1, at Ex. C.

**C.    Opt-In Procedures**

25      The terms of the Settlement Agreement were carefully crafted to balance the interests of
26  the Settlement Class and Defendant.  Heyrich Decl. ¶ 7.  The Settlement Administrator will mail
27  the court-approved Notice of Settlement and Consent Form to all Settlement Class Members

28  PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 4
(2:16-cv-00785-RSL)

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

within ten (10) business days of receiving the Class List. Settlement Agreement ¶ 13(e). The Settlement Notice and Consent Form will inform Settlement Class Members of the nature of the case, how to receive settlement payment, the estimated payment, the scope of their release, and provide additional information. *See* Exhibits A and B to the Settlement Agreement.  Class Members will have sixty (60) days from the date of the initial mailing to submit their Consent Form, in order to become Participating Settlement Class Members who will receive payment. *See* Settlement Agreement ¶¶ 11(h) and (n).

Within five business days of receiving any mailing returned as undeliverable, the Settlement Administrator will re-mail to the forwarding address. *Id.* at ¶ 11(f). If there is no forwarding address, the Administrator will attempt to locate a correct address within five days, and must re-mail the documents within five days of finding the new address. *Id.* During the period between the 25th and 30th day of the initial mailing, the Settlement Administrator will attempt to reach the Settlement Class Members by telephone to advise about the settlement and the notice deadline, and to encourage them to return Consent Form before the deadline if they are interested in participating in the settlement.  *Id.* at ¶ 11(g). Between the 45th and 50th day of the initial mailing, the Settlement Administrator will attempt to reach all Settlement Class Members who have not returned the Consent Form to advise about the settlement and the notice deadline, and to encourage them to return Consent Form before the deadline if they are interested in participating in the settlement.  *Id.* at ¶ 11(h).  Plaintiffs' Counsel specifically negotiated these follow-up steps to be performed by the Settlement Administrator to alert all potential Class Members as to their recovery, particularly because many of the individuals on the Class List no longer are employed by Defendant, and thus some are fast-approaching applicable statutes of limitation. Heyrich Decl. ¶ 7.  Moreover, because many of the Class Members were converted from independent contractor status to W-2 employee status during the course of their employment, these individuals may not be aware that they would otherwise be eligible for compensation pre-dating their latter employment status. *Id.*

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 5
(2:16-cv-00785-RSL)

**HKM Employment Attorneys LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

**D.    Release**

All Participating Settlement Class Members will release Reed Hein & Associates LLC (d/b/a Timeshare Exit Team) ("Reed Hein") and its past, present and future parent companies, subsidiaries, predecessors, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers ("Releasees") of and from any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees for alleged unpaid wages, unpaid overtime wages, liquidated or other damages, unpaid costs, penalties (including willful withholding and late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA or any other state or local wage-related law applicable to the time that the individual was engaged by Reed Hein as independent contractor. Settlement Agreement at Ex. B (Consent Form).

**E.    Calculation of Net Settlement Amounts**

The formula for calculating the Net Settlement Amount requires some explanation as the amounts shift depending on the percentage of the class members who become Participating Settlement Class Members. Participating Settlement Class Members will be eligible for a settlement payment pursuant to an allocation formula based on the number of weeks they worked during the relevant period where Defendant classified them as independent contractors. *See* Settlement Agreement ¶ 11(m).  In the event the total, aggregate number of weeks worked by the Participating Settlement Class Members as independent contractors is forty percent (40%) or less than the total, aggregate number of weeks worked by the Settlement Class Members as independent contractors, then the Net Settlement Amount shall be reduced by fifty-five percent (55%); (ii) in the event the total, aggregate number of weeks worked by the Participating Settlement Class Members as independent contractors is more than forty percent (40%) but less than fifty percent (50%) of the total, aggregate number of weeks worked by the Settlement Class

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 6
(2:16-cv-00785-RSL)

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

Members as independent contractors, then the Net Settlement Amount shall be reduced by forty-five percent (45%); (iii) in the event the total, aggregate number of weeks worked by the Participating Settlement Class Members as independent contractors is more than fifty percent (50%) but less than sixty percent (60%) of the total, aggregate number of weeks worked by the Settlement Class Members as independent contractors, then the Net Settlement Amount shall be reduced by thirty-five percent (35%); (iv) in the event the total, aggregate number of weeks worked by the Participating Settlement Class Members as independent contractors is more than sixty percent (60%) but less than seventy percent (70%) of the total, aggregate number of weeks worked by the Settlement Class Members as independent contractors, then the Net Settlement Amount shall be reduced by twenty-five percent (25%); (v) in the event the total, aggregate number of weeks worked by the Participating Settlement Class Members as independent contractors is more than seventy percent (70%) but less than eighty percent (80%) of the total, aggregate number of weeks worked by the Settlement Class Members as independent contractors, then the Net Settlement Amount shall be reduced by fifteen percent (15%); and (vi) in the event the total, aggregate number of weeks worked by the Participating Settlement Class Members as independent contractors is more than eighty percent (80%) of the total, aggregate number of weeks worked by the Settlement Class Members as independent contractors, then the Net Settlement Amount shall not be subject to any reduction, and the Adjusted Net Settlement Amount shall equal the Net Settlement Amount. Settlement Agreement ¶ 11(m).

In calculating the participation rate by comparing the total, aggregate number of weeks worked by the Participating Settlement Class Members as independent contractors to the total, aggregate number of weeks worked by the Settlement Class Members, no individual Settlement Class Member's failure to opt in to the Settlement and become a Participating Settlement Class Member shall affect the participation rate by more than five percent (5%). Settlement Agreement ¶ 11(m).  This particular provision of the Settlement Agreement was put in place in order to lessen the impact of any one Settlement Class Member's failure to opt-in to the Settlement. Heyrich Decl. ¶ 8.  For instance, if a particular individual who had worked for Defendant as an

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS - 7
(2:16-cv-00785-RSL)

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

Independent Contractor for a long period of time decided to opt out, that person's number of workweeks could skew the aggregate number of workweeks downward significantly, thus resulting in a smaller sum of money for the remaining Participating Settlement Class Members. *Id.* With the 5% provision, no one person's lack of participation affects the overall participation rate by more than 5%. For example, if the aggregate number of workweeks by the Participating Settlement Class Members is 400 and the aggregate number of weeks by all of the Settlement Class Members was 1000, then the participation rate is 40%. *Id.* However, if any person worked more than 50 weeks and failed to opt in, she would have driven the participation rate down by more than 5%. *Id.* For instance, if she worked 100 weeks and failed to opt-in, she would drive the participation rate down by 10%, thus eliminating approximately $37,500 from the available settlement fund. *Id.* Thus, with the 5% provision, any particular person's decision not to participate cannot trigger a "step down" of $37,500 available per 10% participation rate increment.  In this example, the participation rate would be 45% rather than 40% because the maximum impact is 5%. *Id.*

Any Settlement Checks not cashed within 180 days will become void and the funds from those uncashed checks shall revert to Defendant. Settlement Agreement ¶¶ 21-22.

**F.  Service Award**

The Settlement Agreement provides that, with Court approval, Named Plaintiffs each will receive a $5,000.00 service award in recognition of their assistance rendered in obtaining the benefits of the settlement for the class as well as the risks they took to do so. *Id.* ¶ 3.3(i). Named Plaintiffs assisted counsel in the investigation of the claims, produced documents to support the claims, and reviewed and provided feedback on the settlement terms that ultimately helped Plaintiffs' Counsel achieve this settlement. Heyrich Decl. ¶ 11.

**G.  Settlement Claims Administration**

The parties have retained Simpluris Inc. ("Simpluris"), a national class action administrator, to serve as the Settlement Administrator and handle all the tasks identified in Part III, Section C, *supra*.  Simpluris has provided notification and claims administration services in

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS - 8
(2:16-cv-00785-RSL)

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1   more than 5,000 cases. Declaration of Michael Bui ("Bui Decl.") ¶ 3. Over 3,0000 of these were

2   labor and employment law cases. *Id.* In the last 10 years, Simpluris has administered

3   approximately $600,000,000 in settlements. *Id.* Moreover, courts in the Ninth Circuit have

4   approved Simpluris as a settlement administrator in class actions. *See, e.g., Adoma v. Univ. of*

5   *Phoenix, Inc.,* 913 F. Supp. 2d 964, 971 (E.D. Cal. 2012); *Eilerman v. McLane Co., Inc.*, 16-cv-

6   05303-BHS (W.D. Wash. May 17, 2017) (order granting final approval of class action

7   settlement). Simpluris' fees, $5,000, will be paid from the Fund. Settlement Agreement ¶ 11(l);

8   *see also* Heyrich Decl. ¶ 12 and Bui Decl. ¶ 4.

9   **H.   Attorneys' Fees and Litigation Costs**

10          Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel can apply

11   to the Court for $150,000 in combined attorneys' fees and reasonable out-of-pocket costs and

12   expenses incurred in litigating and resolving this matter. The costs and expenses incurred were

13   for filing and service fees and costs related to mediation and currently equal $4,307. Settlement

14   Agreement ¶ 1(c)(i); Heyrich Decl. ¶ 24. Plaintiff respectfully requests that the Court approve

15   reimbursement of those costs ($4,307) and attorneys' fees ($145,693).

16                                   **IV.    ARGUMENT**

17   **A.   A One-Step Approval Process is Appropriate in FLSA Collective Actions.**

18          FLSA settlements that do not include Fed.R.Civ.P. 23 classes can be approved in one

19   step. *See, e.g., Wheeler v. Cobalt Mortgage, Inc.*, C14-1847-JCC (W.D. Wash. Oct. 16, 2015)

20   (order approving joint motion approving FLSA settlement, certifying the case a collective action,

21   and approving the notice and claim form); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015

22   WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA

23   collective action, where collective members must affirmatively opt-in in order to be bound by the

24   settlement (including the settlement's release provision)."); *Bozak v. Fedex Ground Package*

25   *Sys., Inc.*, No. 3:11-Civ.-00738-RNC, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014)

26   (approving an unopposed motion for approval of FLSA settlement and comparing Rule 23 and

27   FLSA class action standards); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 6:11-CV-

28   PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
     SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
     ATTORNEYS' FEES AND COSTS - 9
     (2:16-cv-00785-RSL)

     **HKM EMPLOYMENT ATTORNEYS LLP**
     600 Stewart Street, Suite 901
     Seattle, Washington 98101
     (206) 838-2504

719-ORL-28, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011) (adopting report and recommendation of magistrate to approve FLSA settlement). Moreover, FLSA collective actions do not implicate the same due process concerns as Rule 23 class actions. This is because collective actions under Section 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Rule 23 class action. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, "where the Court evaluates an FLSA collective action settlement, the standard is less exacting than when evaluating a Rule 23 class action settlement." *Grewe v. Cobalt Mortgage, Inc.*, C16-0577-JCC, 2016 WL 4014114, at *4 (W.D. Wash. July 27, 2016). Thus, a district court may approve the settlement in one step, and should do so here for the reasons stated below.

**B.**   **The Settlement Is Fair and Reasonable and Should Be Approved.**

   **1.**   **Standard for Approval**

   An employee has two paths when seeking approval of a settlement of back wages under the FLSA: The Secretary of Labor or the district court. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).[2]  If the employee chooses the latter option, the district court has a duty to determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *See, e.g., Grewe v. Cobalt Mortgage, Inc.*, C16-0577-JCC, 2016 WL 4014114, at *4 (W.D. Wash. July 27, 2016) (citing *Lynn's* with approval); *Lee v. The Timberland Co.*, C 07-2367 JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008) (same); *Fontes v. Drywood Plus, Inc.*, CV-13-1901-PHX-LOA, 2013 WL 6228652, at

---

[2] Although the Ninth Circuit has not explicitly adopted *Lynn's*, this Court discussed *Lynn's* prevalence and its "leading case" status in *Wilson v. Maxim Healthcare Servs., Inc.*, C14-789RSL, 2017 WL 2988289, at *1 (W.D. Wash. June 20, 2017).

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 10
(2:16-cv-00785-RSL)

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

*5 (D. Ariz. Dec. 2, 2013) (same). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores,* 679 F.2d at 1354. *See also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation without uncertain results.") (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)).

The settlement in this case easily meets the standard for approval. The parties have a bona fide dispute over the existence and extent of Defendant's FLSA liability. The reasonable compromise reflected in the parties' Settlement Agreement was reached as a result of extensive pre-suit investigation, discovery, and substantial arm's-length negotiations after commencement of the lawsuit. *See* Heyrich Decl. ¶¶ 4-9.  Moreover, this Settlement also does not present any signs of collusion. It was vigorously negotiated with the help of a well-respected class action employment law mediator. *Id.* ¶ 7; *see also Satchell v. Fed. Express Corp.,* C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Lapan v. Dick's Sporting Goods, Inc*., No. 13 Civ. 11390, 2015 WL 8664204, at *1 (D. Mass. Dec. 11, 2015) (finding assistance of mediator "reinforces that the Settlement Agreement is non-collusive"). All Participating Settlement Class Members' awards will be calculated according to the same allocation formula. Heyrich Decl. ¶ 8. Therefore, the settlement should be approved as fair and reasonable.

**C.      All Factors Considered Support Approval of the Settlement.**

In making its determination as to whether a settlement should be approved, a court may consider "the risk, expense, complexity, and likely duration of litigation; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; and the reaction of putative members to the proposed settlement." *Grewe v. Cobalt Mortgage, Inc*., C16-0577-JCC, 2016 WL 4014114, at *1 (W.D. Wash. July 27, 2016) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988), which discusses Fed.R.Civ.P. 23(e) class action settlement

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 11
(2:16-cv-00785-RSL)

**HKM Employment Attorneys LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

factors). As discussed below, these factors all weigh in favor of approving the parties' settlement.

First, there are risks that Plaintiffs would not succeed on a motion for FLSA notice, or in maintaining a collective through trial. Defendant would likely argue that the various job titles, work locations, and other individualized questions precluded certification, or would warrant decertification of a collective. Additionally, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Given the time, expense, and uncertainty of certification, dispositive motions, trial, and appeal, the Plaintiffs agree that a compromise is appropriate.

Second, the amount offered in settlement, $540,000, is substantial, especially in light of the considerable risk that Plaintiffs face. Plaintiffs' calculations show that the average net settlement award will be approximately $6,818 (after fees, service awards, and all costs are deducted). *Id.* ¶ 10. By Plaintiffs' estimate, this is a substantial percentage of the class' lost wages. *See id.*

Third, continued litigation would decrease the settlement amount available to the putative class members. *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Indeed, there is no doubt that the time and expense of continuing the litigation would be substantial, and that such transactional costs could significantly reduce whatever judgment, if any, Plaintiff could recover through litigation."). Here, if litigation were to continue, the parties would expend significant resources, including additional discovery and motions practice. However, "[a]voiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court." *Id.*  As stated above, there also are risks that Plaintiffs could fail to certify the action, Defendant could move for decertification, and appeals could extend this case for years. Given that Defendant has another individual employment law-related lawsuit pending against it, it is possible that Defendant could even become insolvent by the time Plaintiffs are ever able to collect their wages, if at all. Through the Settlement at hand, the Class Members receive prompt, certain

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 12
(2:16-cv-00785-RSL)

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1  relief.

2         Finally, though Plaintiffs have not yet gauged the reaction of the putative class members

3  to the settlement because the case has not yet been conditionally certified, Plaintiffs are confident

4  that the class members will be interested in recovering such large sums of past wages owed to

5  them. This is not a case of a Plaintiff collecting a few dollars; Participating Settlement Class

6  Members stand to gain a good portion of their alleged lost wages, estimated at nearly $7,000 per

7  person as discussed above. Because this case is a collective action, rather than a class action like

8  in *Hanlon*, Plaintiffs do not risk being part of a settlement they are not interested in because they

9  must affirmatively opt-in to the settlement to recover their portion of the settlement sum.

10        Settlement avoids these risks and produces a prompt and substantial recovery for the

11  class.  As such, the settlement should be approved.

12  **D.     The Settlement Notice and Claimt Form Is Adequate to Inform Class Members.**

13        The Court should also approve the proposed Settlement Notice and Claim Form. See

14  Heyrich Decl., Ex. 1 (Settlement Agreement) at Exs. A (Settlement Notice) and B (Consent

15  Form). The proposed Settlement Notice informs Participating Settlement Class Members of the

16  terms of the settlement, including the allocation formula, how Class Members may participate

17  (or not participate), the estimated settlement payment to which they are entitled, and the release,

18  and the request for attorneys' fees and costs. *Id.* at Ex. A. The Consent Form is a straightforward

19  two-page form. *See Id.* at Ex. B.

20  **E.     The Service Awards to Plaintiffs Should Be Approved as Fair and Reasonable.**

21        Named Plaintiffs in collective actions "play a crucial role in bringing justice to those who

22  would otherwise be hidden from judicial scrutiny." *Rodgers v. Abbster Enters. LLC*, 3:16-CV-

23  00106-GMG, 2017 WL 4453555, at *1 (N.D. W. Va. Oct. 4, 2017). As such, courts commonly

24  approve service awards to named plaintiffs. *See Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-

25  0324 AWI SKO, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012). Class awards "are

26  intended to compensate class representatives for work done on behalf of the class, to make up for

27  financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize

28  PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 13
(2:16-cv-00785-RSL)

**HKM E**MPLOYMENT **A**TTORNEYS **LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). This is especially true in employment litigation. *See, e.g., Taylor v. Fedex Freight, Inc.*, 113CV01137DADBAM, 2016 WL 1588405, at *6 (E.D. Cal. Apr. 20, 2016) ("Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant 'reputational risk' by bringing suit against their former employers.") (citing *Rodriguez.*, 563 F.3d at 958–59); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted))).

The Named Plaintiffs request approval of service awards of $5,000.00 each. *See* Settlement Agreement ¶ 11(l).  Courts in the Ninth Circuit have approved greater awards than this in the FLSA context. *See, e.g., Wheeler v. Cobalt Mortgage, Inc.*, C14-1847-JCC (W.D. Wash. Oct. 16, 2015) (order approving service award of $10,000 to the named plaintiff); *Glass v. UBS Fin. Servs.*, Inc., C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) (order approving service award for $25,000 to the named plaintiff). *See also* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (finding the "mean within case average award" to be approximately $12,000, that number being "the average of incentive awards within a case, then averaged over all cases in the [employment] category.")

The Service Awards that Named Plaintiffs request are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit. Here, the named Plaintiffs undertook this lawsuit over one year ago and spent considerable time preparing documents for, engaging in telephone calls and exchanging emails with, and undergoing interviews by Plaintiffs' counsel. Heyrich Decl. ¶ 11.  The Named Plaintiffs gathered and provided documents to Plaintiffs' counsel; contacted potential class members and witnesses;

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS - 14 (2:16-cv-00785-RSL)

**HKM EMPLOYMENT ATTORNEYS LLP** 600 Stewart Street, Suite 901 Seattle, Washington  98101 (206) 838-2504

1  made themselves available throughout the mediation; and provided input on settlement terms

2  before, during, and after mediation. *Id.*

3  **F.    Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**

4         When reviewing common fund cases like this one, district courts in the Ninth Circuit

5  have discretion to choose either the percentage-of-the-fund method or the lodestar method for

6  calculating attorneys' fees. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,

7  1295–96 (9th Cir. 1994). Here, Plaintiffs' counsel requests $145,693 for attorneys' fees plus

8  $4,307 for litigation costs and expenses. Settlement Agreement ¶ 11(l). The fee award requested

9  is consistent with awards granted in this district. *See Randolph v. Centene Mgmt. Co., LLC,* 3:14-

10 cv-05730-BHS, (W.D. Wash Nov. 28, 2016) (order granting $1,350,000, one-third of the fund, in

11 attorneys' fees); *Eilerman v. McLane Co., Inc.*, 16-cv-05303-BHS (W.D. Wash. May 17, 2017)

12 (order granting final approval and one-third of the fund in attorneys' fees).

13        For the reasons stated below, Plaintiffs' requested fee award is reasonable no matter

14 which calculation method the court chooses.

15        **1.    As a Percentage of the Common Fund, the Requested Fee is Reasonable.**

16        Plaintiffs' requested fee award represents approximately 27% of the gross settlement

17 fund.  This percentage is extremely close to the Ninth Circuit's long-established "benchmark" of

18 25% of the common fund. *See Hanlon*., 150 F.3d at 1029 ("This circuit has established 25% of

19 the common fund as a benchmark award for attorney fees.") (citing *Six (6) Mexican Workers v.*

20 *Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *In re Bluetooth Headset Prods.*

21 *Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011) ("Applying this calculation method, courts

22 typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

23 adequate explanation in the record of any 'special circumstances' justifying a departure.") (citing

24 *Six Mexican Workers*, 904 F.2d at 1311).  Notably, in "most common fund cases, the award

25 exceeds that benchmark." *Knight v. Red Door Salons, Inc.,* 08-01520 SC, 2009 WL 248367, *6

26 (N.D. Cal. Feb. 2, 2009). Moreover, "fee awards in class actions average around one-third of the

27 recovery." *Romero v. Producers Dairy, Foods, Inc.,* 1:05cv0484 DLB, 2007 WL 3492841, *4

28 PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 15
(2:16-cv-00785-RSL)

**HKM Employment Attorneys LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1  (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, *Newberg on Class Actions §* 14.6 (4th

2  ed. 2007)); *see also Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal.

3  July 27, 2010) ("Other case law surveys suggest that 50% is the upper limit, with 30-50%

4  commonly being awarded in cases in which the common fund is relatively small") (citing

5  *Newberg §* 14.6).

6         Courts in the Ninth Circuit evaluate whether a percentage-based fee award is reasonable

7  by reviewing a number of factors including: (1) the results achieved for the class; (2) the risk to

8  class counsel; (3) class counsel's performance; (4) the contingent nature of the fee; and (5) the

9  awards made in similar cases. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-50 (9th Cir.

10  2002). As explained below, all of these factors support Plaintiffs' requested fee award.

### a.   The Results and Benefits Conferred Upon the Class

12         "The overall result and benefit to the class from the litigation is the most critical factor in

13  granting a fee award." *Richardson v. THD At-Home Servs., Inc.*, 1:14-CV-0273-BAM, 2016 WL

14  1366952, at *8 (E.D. Cal. Apr. 6, 2016).  Here, the Settlement will provide the Class with a

15  substantial cash payment. The Settlement Agreement provides that Defendant will pay a

16  maximum settlement amount of $540,000.00 to settle all claims against it. *See* Heyrich Decl. ¶

17  10. This is well within the range of reasonable recoveries for the Class. *Id.*

18         The settlement represents significant value given the attendant risks of litigation. *Id.* ¶ 10.

19  By Plaintiffs' estimation, the settlement amount (after deducting the class awards, administration

20  costs, and fee awards) represents approximately $6,000 per Class Member for the class's lost

21  wages, based upon the estimate that each Participating Settlement Class Member worked

22  between five and seven hours of overtime hours per week and were not paid for their training

23  time.  *Id.* This figure also includes penalties that a factfinder could ultimately determine are

24  inapplicable. *Id.*; *see also* Part IV, Section F(1)(b), *infra*. These sums far surpass the average

25  amount of back wages per employee, approximately $1,000, as identified by the Department of

26  Labor.  *See Average Back Wages per Employee,*

27  https://www.dol.gov/WHD/statistics/moreinfo/Average_Back_Wages_per_Employee.pdf (last

28  PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 16
(2:16-cv-00785-RSL)

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1  visited Nov. 16, 2017). Accordingly, the significant recovery for Plaintiffs warrants the requested

2  fee award.

3            **b.  The Risk of Continued Litigation**

4        "The risk of costly litigation and trial is an important factor in determining the fee

5  award." *Rosales v. El Rancho Farms*, 1:09-CV-00707-AWI, 2015 WL 4460635, at *20 (E.D.

6  Cal. July 21, 2015) (citing *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299–1301 (9th

7  Cir.1994)). Recovery of FLSA claims can be uncertain given the statutes of limitations and the

8  limitations on liquidated damages. The FLSA's statute of limitations is two years, and is

9  extended to three if the violations are willful.  A violation is considered willful "if the employer

10  either knew or showed reckless disregard" for the risk that its conduct violated the FLSA.

11  *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). Here, Plaintiffs may not have been

12  able to prove that Defendant's violations were willful, which would have reduced their reward

13  significantly.  Likewise, "[a]n employer who violates the overtime law is liable not only for the

14  unpaid overtime compensation but also 'in an additional equal amount as liquidated damages.'"

15  *Chao v. A–One Med. Servs., Inc.,*  346 F.3d 908, 920 (9th Cir. 2003) (quoting 29 U.S.C. §

16  216(b)). However, a court could deny the liquidated damage award if it determined that the

17  employer acted in good faith, with objectively reasonable grounds for its belief that it had not

18  violated the FLSA. *Id.*

19        This uncertainty weighs in favor of approving the fee award.  Where, like here, "recovery

20  is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be

21  appropriate." *Franco v. Ruiz Food Prods., Inc*., 1:10-CV-02354-SKO, 2012 WL 5941801, at *16

22  (E.D. Cal. Nov. 27, 2012) (citing *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir.

23  2000) and *In re Heritage Bond Litig*., No. 02–ML–1475 DT, 2005 WL 1594403, at *19, n. 14

24  (C.D. Cal. June 10, 2005). As discussed above, the payments to Participating Settlement Class

25  Members factor in statutory penalties, and thus are even more beneficial to the class than a

26  potential outcome at trial or otherwise.  Based on the significant results achieved for the class in

27  light of the significant risks, this factor supports approval of the fee award.

28  PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 17
(2:16-cv-00785-RSL)

**HKM Employment Attorneys LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

1

#### c.   Class Counsel's Performance

2       "FLSA claims involve complex mixed questions of fact and law . . . [which] must be

3   resolved in light of volumes of legislative history and over four decades of legal interpretation

4   and administrative rulings." *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 743

5   (1981). Thus, to be successful class counsel in a "complex national class action requires unique

6   legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (internal

7   quotations omitted). Plaintiffs' counsel is experienced in wage and hour litigation and class

8   actions.  Heyrich Decl. ¶¶ 13-17; Declaration of Peter Stutheit ("Stutheit Decl.") ¶ 4.  Plaintiff's

9   lead and co-counsel have successfully litigated and settled multiple wage and hour litigation and

10   class actions across several states. *See* Heyrich Decl. ¶14-15; Stutheit Decl. ¶ 4.  Plaintiff's

11   counsel exhibited skill and ability to be able to advocate for and negotiate on behalf of a class of

12   individuals to reach meaningful results for the class members. Thus, this factor supports approval

13   of the fee award.

14

#### d.   Contingency fee

15       The Ninth Circuit has long recognized a public policy of awarding attorneys who take

16   cases on a contingency basis.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig*, 19 F. 3d at

17   1299 ("It is an established practice in the private legal market to reward attorneys for taking the

18   risk of non-payment by paying them a premium over their normal hourly rates for winning

19   contingency cases."). In determining the reasonableness of a requested fee award, "[c]ourts

20   consistently recognize that the risk of non-payment or reimbursement of expenses" is a factor.  *In

21   re Heritage Bond Litig.*, 2005 WL 1594403 at *21. At the outset of the representation, Plaintiffs'

22   Counsel took on a significant degree of risk of nonpayment in agreeing to represent Plaintiffs.

23   Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that

24   they would not be paid. Should the Court reject the settlement, Plaintiffs' Counsel also face

25   significant legal hurdles in establishing certification and proving liability. Plaintiffs' Counsel

26   could have lost, and still could lose, everything they invested in this case.  Accordingly, this

27   favors approval of Plaintiffs' fee award.

28   PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 18
(2:16-cv-00785-RSL)

**HKM Employment Attorneys LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

### e.   Awards Made in Comparable Cases

The Ninth Circuit, while rejecting a model that replicates the market rate, finds it "more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino*, 290 F.3d at 1050 (9th Cir. 2002). The requested fee here, while exceeding the "benchmark" by a very small margin, still clearly meets this criteria and has been affirmed within this district at an even higher percentage. *See Randolph,* 3:14-cv-05730-BHS, (W.D. Wash. Nov. 28, 2016) (order granting one-third of the fund as attorneys' fees); *Eilerman,*, 16-cv-05303-BHS (W.D. Wash. May 17, 2017) (order granting one-third of the fund as attorneys' fees). *See also Romero v. Producers Dairy, Foods, Inc.,* 1:05cv0484 DLB, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, *Newberg on Class Actions §* 14.6 (4th ed. 2007) ("fee awards in class actions average around one-third of the recovery"). Plaintiffs' Counsel's request is consistent with similar case awards and therefore weighs in favor of approval by this Court.

### 2.     A Lodestar Cross-Check Also Supports Plaintiffs' Fee Request.

Plaintiffs' Counsel's fee request should be approved because its reasonability is confirmed by a lodestar cross-check. *See Vizcaino,* 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."). When used to cross-check the percentage, the lodestar method does not require an extensive or exhaustive review of counsel's hours. *See Franco.,* 2012 WL 5941801, at *18 (citing *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.").

Here, Plaintiffs' counsel's current lodestar is $101,331.50. Heyrich Decl., ¶ 21. Although the requested 27% requested fee exceeds the lodestar, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assur. Soc'y of U.S.,* 307 F. 3d 997, 1008 (9th Cir. 2002) (quoting *In re Wash. Pub. Power*

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 19
(2:16-cv-00785-RSL)

**HKM Employment Attorneys LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504

*Supply Sys. Sec. Litig*, 19 F. 3d at 1299). Moreover, courts have discretion to use a multiplier, and the one here, 1.43, is within the range approved by Ninth Circuit courts. *See, e.g., Vizcaino,* 290 F.3d at 1051 (3.65 multiplier) and 1051 n.6 (collecting common fund case fee awards where multipliers were within the "range of 0.6–19.6, with most (20 of 24, or 83%) from 1.0–4.0 and a bare majority (13 of 24, or 54%) in the 1.5–3.0 range)"); *Steiner v. Am. Broad. Co., Inc.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (6.85 multiplier); *Int'l Broth. Of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.,* No. 3:09-CV-00419-MMD, 2012 WL 5199742, *4 (D. Nev. Oct. 19, 2012) (2.02 multiplier). Here, as demonstrated above, a lodestar cross-check, within the range of multipliers, confirms that the attorneys' fees requested are reasonable.

Plaintiffs' Counsel's substantial work to date has provided a significant recovery for Class Members. Because the request for approximately 27% of the fund is fair and reasonable no matter how it is calculated, the court should approve the request.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the $540,000.00 settlement set forth in the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit 1 to the Declaration of Donald W. Heyrich in Support of Plaintiffs' Unopposed Motion for Approval of Settlement, Class Notice, Service Awards, and Attorneys' Fees and Costs ("Heyrich Decl."); (2) certifying the Settlement Class pursuant to 29 U.S.C. § 216(b) for settlement purposes only; (3) approving the proposed Notice of Class Action Settlement ("Settlement Notice") and "Consent to Join Settlement, Release, and Claim Form" ("Consent Form") (attached as Exhibits A and B, respectively, to the Settlement Agreement), and directing distribution of each; (4) approving service awards of $5,000 each to Named Plaintiffs; (5) approving Plaintiffs' request for $145,693 in attorneys' fees and $4,307 in litigation costs expenses; (6) approving the Settlement Administrator's fees and costs of $5,000; (7) dismissing the Action and all Released Claims without prejudice as to Plaintiffs and all Participating Settlement Class Members, with such dismissal becoming a dismissal with prejudice 15 business days after the lapse of the Notice Deadline, provided the

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 20
(2:16-cv-00785-RSL)

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

specific relevant terms of the settlement have been met;[3] (8) providing that each Party shall bear

his or its own attorneys' fees and costs except as otherwise provided herein; and (9) declaring

that the Court shall have continuing jurisdiction over the Action (including for purposes of

submitting the returned Settlement Consent Forms from Participating Settlement Class

Members).

RESPECTFULLY SUBMITTED:  November __, 2017.

*By: s/ Donald W. Heyrich*
*By: s/ Jason A. Rittereiser*
*By: s/ Rachel M. Emens*

Donald W. Heyrich, WSBA #23091
Jason A. Rittereiser, WSBA #43628
Rachel M. Emens, WSBA #49047
**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, WA  98101
Tel: (206) 838-2504
Fax: (206) 838-2505
Email: dheyrich@hkm.com
            jrittereiser@hkm.com
            remens@hkm.com

*By: s/ Peter Stutheit*

Peter Stutheit, WSBA #32090
**STUTHEIT KALIN LLC**
308 SW First Avenue, Suite 325
Portland, OR 97204
Tel: (503) 493-7488
Fax: (503) 715-5670
Email: peter@stutheitkalin.com

*Attorneys for Plaintiffs*

---

[3] *See supra* Note 1.

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 21
(2:16-cv-00785-RSL)

# CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

Peter H. Nohle, WSBA #35849
**Jackson Lewis P.C.**
520 Pike Street, Suite 2300
Seattle, WA 98101
Telephone: 206-405-0404
Fax: 206-405-4450
Email: peter.nohle@jacksonlewis.com

Christine A. Slattery, WSBA #39783
**Jackson Lewis P.C.**
1001 SW Fifth Ave., Suite 1205
Portland, OR 97204
Telephone: 503-345-4153
Fax: 503-229-0405
Email: christine.slattery@jacksonlewis.com

*Attorneys for Defendants*

DATED this 27th day of November, 2017, at Seattle, Washington.


*s/ Linsey Teppner*
Linsey Teppner, Legal Assistant
HKM Employment Attorneys LLP

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 22
(2:16-cv-00785-RSL)

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504